[Docket No. 20]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MICHELLE AND FRANK TEDESCO, et al.<br><br>    Plaintiff,<br><br>    v.<br><br>BOROUGH OF HADDONFIELD and NEW JERSEY-AMERICAN WATER COMPANY, INC.,<br><br>    Defendants. | Civil A. No. 24-09005<br>(RMB/MJS)<br><br>OPINION |

**APPEARANCES:**

Jennifer Hiller Nimeroff, Esq.
Roberd D. Sokolove, Esq.
Weir LLP
20 Brace Road, Suite 201
Cherry Hill, New Jersey 08034

    *Attorney for Plaintiffs*

William F. Cook, Esq.
Joseph T. Carney, Esq.
Brown & Connery LLP
360 North Haddon Avenue
Westmont, New Jersey 08108

    *Attorney for Defendants the Borough of Haddonfield*

**RENÉE MARIE, BUMB, Chief United States District Judge:**

Plaintiffs Michelle and Frank Tedesco, Rose and Victor Palladino, Alex and Sheila Colalillo, Jodi and Steve Mellul, and Alice and Ronald Sandmeyer

(collectively, "Plaintiffs") have brought this action alleging that the Defendant the Borough of Haddonfield ("Defendant" or the "Borough") has failed to remedy what Plaintiffs deem to be a mismanaged stormwater system and that as a result, Plaintiffs have suffered property damage through various flooding events over the course of years.  Defendants argue that Plaintiffs have not complied with the notice requirements of the New Jersey Tort Claims Act ("TCA") and have accordingly moved for Summary Judgment on all claims governed by the TCA, including Plaintiffs claims for negligence/dangerous condition, trespass, and nuisance.  Plaintiffs respond, arguing that they have provided notice as required under the TCA, or in the alternative that they have "substantially complied" with the requirements of the TCA such that notice should be deemed to have been given.

For the reasons stated below, this Court agrees with the Borough that the Plaintiffs have not provided the required notice under the TCA, nor have they "substantially complied" in a manner that puts the Defendant on notice of the claims and satisfies the purposes of the notice provisions in the TCA.

## I. FACTUAL BACKGROUND

The facts of this case are predominantly undisputed.  Each Plaintiff owns and resides at respective properties in the Borough of Haddonfield: Michelle and Frank Tedesco at 315 Station Avenue; Rose and Victor Palladino at 60 Chews Landing

Road[1]; Alex and Sheila Colalillo at 100 Chews Landing Road, Jodie and Steve Mellul at 80 Chews Landing Road, and Alice and Ronald Sandmeyer at 340 Kings Highway West (collectively the "Properties"). [Defendant's Statement of Undisputed Material Facts ("SUMF") ¶ 1.]  Defendant is a public entity organized and existing under the laws of the state of New Jersey. [SUMF ¶ 2.]

Plaintiffs allege that "Haddonfield's storm-water management system backs up and overflows during rain events and the Properties flood nearly every time there is a significant rain event." [SUMF ¶ 4 (quoting Compl. ¶ 9).]  Plaintiffs assert that there have been numerous flood events through the years and which continue to occur at present time and that the flooding events have caused damage to their respective properties. [SUMF ¶¶ 5-6.]  Defendant contends that Plaintiffs did not serve notice of their tort claims and further that no Plaintiff has filed any motions with the Superior Court of New Jersey seeking leave to file a late notice of his or her tort claim. [SUMF ¶¶ 12-13].  Whether or not proper notice was given as required under the TCA is the sole fact in dispute, with Plaintiffs claiming that each Plaintiff informed the Defendant, "either directly or through their neighbors, of the flooding conditions impacting their respective properties, …, and that [he or she] had suffered property damage as a result of the flooding." [Plaintiffs Supplemental Statement of Material Facts ("SSMF") ¶ 1.]

---

[1] The Palladino's ownership of the property at 60 Chews Landing Road has been questioned and is the subject of another pending Motion for Summary Judgment and related Motion for Leave to Amend the Complaint. (ECF Nos. 34 and 45, respectively).

To support this contention Plaintiffs reference various communications (originating from both the Plaintiffs and the Defendant) consisting of letters, emails, and newspaper publications spanning over 38 years. [SSMF ¶¶ 2-18.]

*Communications from Plaintiffs*

The earliest of such communications from any of the Plaintiffs was a letter from August 20, 1987, written by Frank Tedesco to the then-Mayor and then-Administrator of Haddonfield, notifying them of the flooding "in his area, …, and the property subsequently purchased by the Mellus at 80 Chews Landing Road." [SSMF ¶ 2, citing Certification of Counsel by Jennifer Hiller Nimeroff ("Nimeroff Cert.") Ex. A.] Mr. Tedesco's letter additionally included a preliminary report from an engineer who explained that the problem must be corrected by the Borough. [*Id.*]

There were no other communications from the Plaintiff until a February 28, 2016 letter from Alex Colalillo to the Borough's then-Commissioner in which Mr. Colalillo explained his disagreement with the conclusion of a Borough-Wide Drainage Study that the area in question was "not problematic," explaining the impacts from various flooding events.[2] [SSMF ¶ 6, citing Nimeroff Cert., Ex. G.] The next year, Mr. Tedesco sent an email to the Borough's then-Clerk and then-Business Administrator wherein he explained that "there've been numerous problems and issues with the drainage at [the subject] intersection" and that "the problem remains a serious health and safety issue." [SSMF ¶ 8, citing Nimeroff Cert., Ex. I.] Mr. Tedesco

---

[2] The Borough responded to Mr. Colalillo's letter via email on March 2, 2016, acknowledging receipt of his letter and the historical issues he described. [SSMF ¶ 7, citing Nimeroff Cert., Ex. H.]

4

further explained "that he consulted with the Camden County Engineer who advised him that easements place the responsibility for the drainage system at the area in question on the Borough." [*Id.*]  The letter ends with a request by Mr. Tedesco for a meeting with the appropriate officials of the Borough "to discuss an imminent opportunity (resulting form engineering work taking place on the Palladino Plaintiffs' property) to solve or improve a decades old problem." [*Id.*]  The requested meeting took place on May 30, 2017, as documented by email correspondence between Mr. Tedesco and officials of the Borough, and was further discussed (as well as the resulting investigation) in email communications from June of 2017 between Mr. Tedesco and officials of the Borough. [SSMF ¶ 9, citing Nimeroff Cert., Ex. J]

In or about August of 2019, the Tedescos submitted an application to the New Jersey Department of Environmental Protection ("NJDEP") for the NJDEP to buy their property under the Blue Acres Program. [SSMF ¶¶ 12, 14, citing Nimeroff Cert., Ex. M.]  The Tedescos sought the assistance of Senator Stephen Sweeney in obtaining approval by the Blue Acres Program to purchase their property and briefly summarized the property damages resulting from a June 20, 2019 flood, which were also described in more detail in the application. [*Id.*]  "On November 1, 2019, the NJDEP informed the Tedescos that there was no Blue Acres funding for flood buyouts in the Borough," but further advised that they had forwarded the Tedesco's application to the Borough "in case the Borough had an interest in purchasing the Tedescos' property." [SSMF ¶ 13, citing Nimerof Cert., Ex. N.]

5

The final and most recent communications from any of the Plaintiffs were a series of email correspondence between the Sandmeyer Plaintiffs and Borough officials. [SSMF ¶¶ 15,16, citing Nimeroff Cert., Ex. O.] Specifically, the Sandmeyers emailed officials of the Borough on June 24, 2019, notice of property damage sustained resulting from a flood event which occurred on June 20, 2019. [*Id.*] Further, the Sandmeyers again emailed officials of the Borough and attached pictures documenting the flooding in January of 2020 and again in March and April of that same year. [*Id.*] The Sandmeyers again emailed officials of the Borough in June and July of 2023 seeking feedback from a meeting regarding the flooding on their property and including pictures documenting the flood events. [*Id.*]

*Communications from the Borough*

In addition to communications originated by themselves, Plaintiffs also point to several letters and emails by the Borough in support of their assertion that adequate notice to the Borough was provided. [SSMF ¶¶ 4, 5, 7, 10, 17.] Specifically, on June 15, 1995, the Borough sent a notice to residents near Chews Landing Road and Station Avenue inviting them to a meeting to discuss alternatives to the drainage and flooding issues. [SSMF ¶ 4, citing Nimeroff Cert., Ex. C.] Following that meeting the Borough issued a subsequent notice to residents on January 23, 1996, advising that the preferred option to deal with the issue was unworkable due to costs, disruption, and environmental regulation. [SSMF ¶ 5, citing Nimeroff Cert., Ex. E.] Years later, in February of 2020, the Borough sent a similar notice directly to the Sandmeyers advising them of a neighborhood meeting to discuss options to improve the drainage

and flooding issues in the area of Kings Highway. [SSMF ¶ 17, citing Nimeroff Cert., Ex. P].

Plaintiffs also point to emails sent from Charles Chelotti, P.E., an engineer working on the Palladino property, to officials of the Borough, in support of their assertion that the Borough had adequate notice. [SSMF ¶ 10, citing Nimeroff Cert., Ex. K.] Specifically, in his July 2017 emails Mr. Chelotti references "significant flooding in the area of Chews Landing Road" and that the "flooding was so forceful that it unearthed a newly-installed pipe on the Palladino property[.]" [*Id.*]

*Newspaper Articles*

In addition to the above communications to or from the Borough, Plaintiffs also point to several newspaper articles in support of their contention that the Borough had adequate notice. [SSMF ¶¶ 3, 5, 18.] Specifically, Plaintiffs point to a February 22, 1990 article in the Haddon Gazette titled "Officials Hope Project Will Bail Out Residents," which plaintiffs cite in reference to a commissioned drainage study by the Borough. [SSMF ¶ 3, citing Nimeroff Cert., Ex. B.] Plaintiffs next cite a July 13, 1995 article from the Haddon Herald, titled "Residents Seek To End Flooding Woes," which was in reference to the January 23, 1996 notice to residents regarding the drainage solutions options which were discussed at the meeting which took place the prior year. [SSMF ¶ 5, citing Nimeroff Cert., Ex. F.] Finally, Plaintiffs reference a January 14, 2022 article in the Sun Newspapers titled "Pennoni Reps Give Update On Drainage Grant Project," in support of their averment that "the Borough hired a consulting firm to provide a list of improvement projects that could be undertaken by

the Borough to help mitigate flooding in the Borough." [SSMF ¶ 18, citing Nimeroff Cert., Ex. Q.]

## II. PROCEDURAL HISTORY

Plaintiffs commenced this litigation on August 8, 2024, in the Superior Court of New Jersey, Law Division, Camden County. [SUMF ¶ 3; *see* ECF Docket No. 1, Ex. A.] Plaintiffs' complaint contains four counts against Defendant: Count I – Negligence/ Dangerous Condition; Count II – Nuisance; Count III – Trespass; and Count IV – Inverse Condemnation[3] in violation of the Fifth Amendment of the United States Constitution and 42 U.S.C. § 1983. [SUMF ¶ 7 (citing Compl. ¶¶ 18-48).] Defendant timely removed the action to this Court on September 6, 2024. [*see* ECF Docket No. 1.] **Plaintiffs did not seek leave before the Superior Court of New Jersey, nor this Court, to file a late notice of claim in connection with their causes of action arising from the alleged flood damage.** [SUMF ¶ 13.]

## III.   LEGAL STANDARD

Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Id.* at 250.

---

[3] Count IV is not addressed in Defendant's Motion for Summary Judgment.

8

When deciding the existence of a genuine issue of material fact, a court's role is not to weigh the evidence: all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Products Corp.*, 720 F.2d 303, 307 n.2 (3d Cir.1983). However, "the mere existence of a scintilla of evidence," without more, will not give rise to a genuine issue for trial. *Anderson*, 477 U.S. at 252. In the face of such evidence, summary judgment is still appropriate "[w]here the record ... could not lead a rational trier of fact to find for the nonmoving party...." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a "fair-minded" jury could "reasonably" decide.'" *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250 (quoting FED. R. CIV. P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995). The

threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Quincy Mut. Fire Ins. Co. v. Scripto USA,* 573 F. Supp. 2d 875, 878 (D.N.J. 2008) (quoting *Liberty Lobby,* 477 U.S. at 250).

### IV. DISCUSSION

#### A. The New Jersey Tort Claims Act

"When the New Jersey Legislature effected a limited waiver of sovereign immunity by enacting the Tort Claims Act ("TCA"), it declared it 'to be the public policy of [New Jersey] that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein.'" *Caputo v. Cherry Hill Township,* 2025 WL 2694007 at *3 (D.N.J. Sep. 22, 2025) (quoting *H.C. Equities, LP v. Cnty of Union,* 247 N.J. 366, 381 (2021) (quoting N.J.S.A. 59:1-2). The TCA's guiding principle is that "immunity from tort liability is the general rule and liability is the exception." *H.C. Equities, LP v. Cnty of Union*, 247 N.J. 366, 381 (2021) (quoting *D.D. v. Univ. of Med. & Dentistry of N.J.,* 213 N.J. 130, 133-34 (2013)). Through the TCA, the New Jersey Legislature has expressly barred any action against a public entity or employee "unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." *Id.* (quoting N.J.S.A. 59:8-3(a)). In that regard, the TCA requires that a notice of tort claim include:

> (a) The name and post office address of the claimant;

10

>(b) The post-office address to which the person presenting the claim desires notices to be sent;
>
>(c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;
>
>(d) A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim;
>
>(e) The name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and
>
>(f) The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.

N.J.S.A 59:8-4

The TCA "imposes a strict time limit for the filing of a notice of claim." *H.C. Equities, LP,* 247 N.J. at 382. "A claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the 90th day after accrual of the cause of action." N.J.S.A. 59:8-8. For the purposes of the TCA, "a claim accrues on the date on which the underlying tortious act occurred." *H.C. Equities, LP*, 247 N.J. at 382 (quoting *Ben Elazar v. Macrietta Cleaners, Inc.*, 230 N.J. 123, 134 (2017); *see Beauchamp v. Amedio,* 164 N.J. 111, 116 (2000) (citing Harry A. Margolis & Robert Novack, *Claims Against Public Entities*, 1972 Task Force cmt. on N.J.S.A. 59:8-1).

11

The TCA requires that a claimant wait six months from "the date notice of claim is received" to "file suit in an appropriate court of law." N.J.S.A. 59:8-8. The TCA states in pertinent part:

> The claimant shall be forever barred from recovering against a public entity or public employee if:
>
> a. The claimant failed to file the claim with the public entity within 90 days of accrual of the claim except as otherwise provided in N.J.S.59:8-9; or
>
> b. Two years have elapsed since the accrual of the claim;
>
> …

N.J.S.A 59:8-8

Strict compliance is generally required with the provisions of the TCA; however, "[t]he Legislature recognized that discretionary judicial relief from the ninety-day Tort Claims Act requirement may be necessary to ameliorate the consequences of a late filing in appropriate cases." *H.C. Equities, LP*, 247 N.J. at 382-83 (quoting *McDade v. Siazon*, 208 N.J. 463, 476 (2011)). The TCA gives a court the discretion to permit a claimant who has not filed notice in accordance with N.J.S.A. 59:8-8's strict ninety-day deadline the ability "to file a late notice at any time *within one year after the accrual* of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby." *Id.* (quoting N.J.S.A 59:8-9) (emphasis added). However, after the end of that one-year period to file a late notice of claim, "the court is without authority to relieve a plaintiff from his failure to have filed a

notice of claim, and a consequent action at law must fail." *Id.* (quoting *Rogers v. Cape May Cnty. Off. of Pub. Def.*, 208 N.J. 414, 427 (2011).

The substantial compliance doctrine "operates 'to prevent barring legitimate claims due to technical defects.'" *County of Hudson v. State, Dep't of Corr.*, 208 N.J. 1, 21 (2011) (quoting *Lebron v .Sanchez*, 407 N.J. Super. 204, 215 (App. Div. 2009)). When faced with a claim of substantial compliance, courts consider the following factors: "(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not a strict compliance with the statute." *H.C. Equities, LP*, 247 N.J. at 386. (internal citations and quotations omitted). In the context of TCA cases, "the doctrine of substantial compliance 'has been limited carefully to those situations in which the notice, although both timely and in writing, had technical deficiencies that did not deprive the public entity of the effective notice contemplated by the statute.'" *Id.* (quoting *D.D. v. Univ. of Med. & Dentistry of N.J.,* 213 N.J. 159 (2013)).

"The New Jersey Supreme Court has held that claims against a public entity for dangerous condition, trespass, and nuisance are all governed by the TCA and its included notice requirements." *Caputo,* 2025 WL 2694007 at *4. (citing *Russo Farms, Inc. v. Vineland Bd. Of Educ.,* 144 N.J. 84, 97-98 (1996) (citing N.J.S.A. 59:4-2); *see also Birchwood Lakes Colony Club, Inc. v. Borough of Medford Lakes,* 90 N.J. 582, 593, 596 (1982). In *Russo*, a case with similar allegations as those here, the Court held that in

13

the context of the TCA, claims against a municipality for repeated flooding resulting from poor drainage constituted a new tort with each new injury. *Russo Farms, Inc.,* 144 N.J. at 99-101. "That new tort is an 'alleged present failure' to remove the nuisance, and '[s]ince this failure occurs each day that [defendant] does not act, the [defendant's] alleged tortious inaction constitutes a continuous nuisance for which a cause of action accrues anew each day.'" *Id.* at 99. "Essentially, courts in [such] cases impose a duty on the defendant to remove the nuisance." *Id.* The New Jersey Supreme Court held that, "[a]s a result, each new injury suffered by plaintiffs was a new tort because each contained every element of a tort, including a new breach of duty[]" to prevent or remedy the flooding. *Id.* at 104. Accordingly, the Court barred the plaintiffs' claims and only permitted those claims which accrued anew from flooding events within ninety days prior to their notice of tort claim and within the two year limitations period contained in N.J.S.A. 59:8-8.[4] *Id.* at 107.

### B. Plaintiffs' Claims

Here, it is clear under New Jersey jurisprudence – and Plaintiffs do not dispute – that Plaintiffs' claims for negligence/ dangerous condition, nuisance, and trespass against Defendant based on flooding caused by alleged poor drainage management systems are subject to the TCA's 90-day tort claim notice provisions. *See* N.J.S.A. 59:8-8; *Russo Farms, Inc.,* 144 N.J. at 99-101, 107. In the context of the TCA, each new

---

[4] The "continuing nuisance" doctrine "is not an exception that permits evasion of the statute of limitations, but rather an 'accrual' test that allows claims to the extent that they have accrued within the limitations period. *Russo Farms, Inc.*, 144 N.J. at 105.

instance of flood damage constituted a new breach of duty to remove the nuisance, which gives rise to a new injury and subsequent new tort claim that must have been filed within ninety days of its accrual. *See Russo Farms, Inc.,* 144 N.J. at 99-101, 107. Thus, the operative question for the Court to answer is whether Plaintiffs complied with the TCA's notice of claim requirements. *See* N.J.S.A. 59:8-8. The undisputed facts demonstrate that Plaintiffs did not.

    Plaintiffs cite to several communications they purport to establish notice; however, none of them contained sufficient information in which to put Defendant on notice of the tort claim as required by N.J.S.A. 59:8-4. Indeed, none of the referenced communications included the "name and post office address of the claimant;" the "address to which the person presenting the claim desires notices to be sent;" the "date, place, and other circumstances … which give rise to the claim asserted;" the "names of the public entity … [allegedly] causing the injury;" or the "amount claimed … including the estimated amount of any prospective injury, damage, or loss … together with the basis of computation of the amount claimed." N.J.S.A. 59:8-4 (*see generally,* SUMF; SSMF.)

    Given the dates of the alleged notices by Plaintiff, and the strict two year bar for claims contained in N.J.S.A. 59:8-8(b), the Court can easily dispose of the bulk of the purported notices without analyzing whether they contained the requisite information under N.J.S.A 59:8-4 because even if they were considered valid notice, this subsequent action would have been barred by the time limitation in the TCA. Specifically, the timing requirements of N.J.S.A 59:8-8 are strictly construed and while

courts recognize the doctrine of substantial compliance in regard to granting leniency to the 90 day notice of the claim requirement, no such exception has been recognized to the two year bar contained in N.J.S.A. 59:8-8(b). As a result, because this action commenced on August 8, 2024, any claim accruing against Defendant prior to August 8, 2022 is barred under N.J.S.A. 59:8-8(b). *see Board of Education of Borough of Kinnelon, Morris County v. D'Amico*, 305 A.3d 513, 523 (N.J. Super. Ct. App. Div. Nov. 9, 2023); *Miles v. City of Jersey City,* 2018 WL 4005742 at *9 (D.N.J. Aug. 22, 2018); *Russo Farms, Inc. v. Vineland Bd. Of Educ.*, 144 N.J. 84, 106-107 (1996). Thus, no communication which occurred prior to that date can constitute the required notice, regardless of whether or not the contents of those communications included all requisite information under the TCA, which, in any event, the communications did not. Of the multitude of communications which Plaintiff allege constitutes the required notice under the TCA, only one set was given within the time period required, the second set of Sandmeyer emails exchanged in June and July of 2023. (see SSMF ¶ 15, citing Nimeroff Cert, Ex. O.)

    As is the case with the rest of the communications cited by Plaintiffs, the Sandmeyers' emails do not include the required information to constitute a notice of tort claim under the TCA – they do not include the "name and post office address of the claimant;" the address the "person presenting the claim desires notices to be sent;" the "name or names of the public entity, employee or employees causing the injury, damage or loss, if known;" nor the "amount claimed as of the date of presentation." N.J.S.A. 59:8-4. Plaintiffs' attempts to rely on communications originating from the Borough or from

the newspaper publications is similarly unavailing because the notice as required under the TCA "shall be presented *by the claimant or by a person acting on his behalf*[.]" N.J.S.A. 59:8-4 (emphasis added) *see also H.C. Equities, LP*, 247 N.J. at 370-71; *O'Donnell v. New Jersey Turnpike Authority,* 236 N.J. 335, 345 (2019).

Plaintiffs insist that they substantially complied with the TCA notice requirements, arguing that the communications between the various plaintiffs and the Defendant "substantially satisfies the purposes for which notices of claim are required," and that the Defendant knew about the drainage and flooding issues. (Pls.' Opp. Br. at 10-12.) However, substantial compliance "has been limited carefully to those situations in which the notice, although both *timely and in writing,* had technical deficiencies that did not deprive the public entity of the effective notice contemplated by the statute." *D.D. v. Univ. of Med. & Dentistry N.J.,* 213 N.J. 159 (2013)) (emphasis added). Here, Plaintiffs have never filed anything resembling a notice of tort claim and instead cite to numerous communications (some oral, some written) between the various Plaintiffs and the Defendant going as far back as over 38 years ago. *See* Pls.' Opp. Br. at 12-15.) Nor do Plaintiffs provide "a reasonable explanation why there was not a strict compliance with the statute." *H.C. Equities, LP*, 247 N.J. at 386. Tellingly, Plaintiffs have cited no authority to support their contention that the notice of tort claim requirement is satisfied where the defendant has general knowledge of the drainage and flooding issues or has investigated such issues, regardless of whether the injured party has attempted to provide notice to the public entity of a potential claim against it. Because Plaintiffs have taken no steps to comply with the TCA and its

notice requirements and provided no meaningful notice to Defendant of the claims which are alleged in this lawsuit, the Court finds that Plaintiffs have not substantially complied with the TCA.[5] *See H.C. Equities, LP*, 247 N.J. at 386; *County of Hudson*, 208 N.J. at 21; *Lebron*, 407 N.J. Super. At 215.

The continuing nuisance doctrine cannot save Plaintiff's claims here. As described, *supra*, in note 4, the continuing nuisance doctrine does not allow for avoidance of a limitations period but rather serves as an accrual test to allow claims that have accrued within the limitations period. *Russo Farms, Inc.*, 144 N.J. at 105-107. What that means in the context of this action is that the Plaintiffs are permitted to file an actual notice of tort claim for new claims which have since accrued as a result of the continuing nuisance.[6] What this does not do is extend the two-year limitations period indefinitely to allow Plaintiffs to include all prior claims for damages following this new notice. The new notice of claim allowed by the continuing nuisance doctrine would lead to a suit materially different than the instant action and would be limited to the claims and damages encompassed in the notice actually given.[7]

In sum, the Court finds that Plaintiffs have not complied with the TCA notice requirements and have failed to file a notice(s) of tort claim within ninety days of the

---

[5] The Court further notes that Plaintiffs' failure to comply with the notice requirements of the TCA has prejudiced Defendant's ability to prepare a defense, inform Defendant of its potential indebtedness, and timely settle any of Plaintiffs' meritorious tort claims, which is the purpose of the TCA's notice requirements. *See H.C. Equities, LP,* 247 N.J. at 383-84.

[6] Indeed, Plaintiffs' have advised the Court in their September 24, 2025 letter that they have done just that. (*see* ECF 58).

[7] It is for that reason that Plaintiffs' public policy arguments are unavailing. A subsequent action based on Plaintiffs' newly filed notice of tort claim would not function to bring in all claims and damages currently alleged in this litigation but would rather be limited to those claims and damages included in the notice and within the statutory limitations period of N.J.S.A. 59:8-8(b).

accrual of their negligence/ dangerous condition, trespass, or nuisance claims arising from the alleged drainage and flooding issues. Nor have Plaintiffs sought judicial leave to file a late notice of claim within one year of the accrual of such claims. *See* N.J.S.A. 59:8-9. Because the specific flooding events at issue in this litigation occurred more than two years prior to the filing of this action, and Plaintiffs have not complied with the notice requirements of the TCA, those claims are barred by the TCA and application of sovereign immunity. Accordingly, the Court **GRANTS** defendant's Motion for Partial Summary Judgment.

## V. CONCLUSION

For all the above reasons, the Borough of Haddonfield's Motion for Partial Summary Judgment is **GRANTED.** An accompanying Order of today's date shall issue.

 s/Renee Marie Bumb
RENÉE MARIE BUMB
Chief United States District Judge

DATED: November 18, 2025