Neutral
As of: November 24, 2025 4:58 PM Z

# Twp. of Montville v. MCA Assocs., L.P.

Superior Court of New Jersey, Appellate Division

April 9, 2008, Argued; August 18, 2008, Decided

DOCKET NO. A-4327-06T2

**Reporter**
2008 N.J. Super. Unpub. LEXIS 1830 *

TOWNSHIP OF MONTVILLE, Plaintiff-Respondent, v. MCA ASSOCIATES, L.P., Defendant/Third-Party Plaintiff-Appellant, v. DEPARTMENT OF ENVIRONMENTAL PROTECTION OF THE STATE OF NEW JERSEY and THE COMMISSIONER OF THE DEPARTMENT OF ENVIRONMENTAL PROTECTION, Third-Party Defendants-Respondents.

**Notice:** NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION.

PLEASE CONSULT NEW JERSEY RULE 1:36-3 FOR CITATION OF UNPUBLISHED OPINIONS.

**Prior History:** [*1] On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-3718-02.

## Core Terms

consent judgment, Township, regulations, condemnation, inverse condemnation, wetlands, just compensation, environmental regulation, terms, third party complaint, parties, trial court, stringent, development rights, property owner, in limine, Expectations, appraisal, rights, zone, inverse condemnation action, negotiation, purposes, remedies

**Counsel:** Dennis J. Drasco argued the cause for appellant (Lum, Drasco & Positan, LLC, attorneys; Mr. Drasco, of counsel and on the brief; Kevin J. O'Connor, on the brief).

James T. Bryce argued the cause for respondent, Township of Montville (Johnson, Murphy, Hubner, McKeon, Wubbenhorst, Bucco & Appelt, P.C., attorneys; Mr. Bryce, on the brief).

Barbara L. Conklin, Deputy Attorney General, argued the cause for respondents, State of New Jersey Department of Environmental Protection and Commissioner Bradley Campbell (Anne Milgram, Attorney General, attorney; Nancy Kaplen, Assistant Attorney General, of counsel; Ms. Conklin, on the brief).

**Judges:** Before Judges Parker, R. B. Coleman and Lyons.

## Opinion

PER CURIAM

This is an eminent domain action in which the Township of Montville (Township) condemned property owned by Montville Center Associates (MCA) for the purpose of preserving open space. MCA did not contest the condemnation, but challenged the amount of compensation awarded.

MCA appeals from three orders: (1) an order entered on March 29, 2005, denying MCA's motion in limine; (2) an order entered on July 21, 2006 [*2] dismissing MCA's third party complaint against the Department of

Case 1:24-cv-09005-RMB-MJS    Document 68-2    Filed 11/24/25    Page 2 of 8 PageID: 815

2008 N.J. Super. Unpub. LEXIS 1830, *2

Environmental Protection (DEP) and its Commissioner; and (3) a consent judgment entered on March 8, 2007 in favor of MCA in the amount of $ 2,684,500.

In June 1999, the Township began the condemnation process, seeking an appraisal for MCA's property. MCA opposed the Township's inspection of the property for appraisal purposes.

In August 1999, the Township adopted a resolution authorizing condemnation proceedings for the property since MCA had rejected a purchase offer for the appraised amount of $ 780,000.

In January 2002, the Township filed a verified complaint in condemnation and sought an order to show cause for access to the property to conduct an investigation and tests necessary to identify and remediate any environmental liabilities associated with the property. In April 2002, the parties entered into a consent order whereby MCA agreed to provide the Township with access to the property. Thereafter, that litigation was dismissed.

In [*3] November 2002, the Township filed a verified complaint seeking to condemn MCA's property for open space purposes. The Township also filed a declaration of taking and a notice of lis pendens.

On December 19, 2002, the court entered an order to show cause why judgment should not be rendered appointing three commissioners to fix the just compensation for the property. The court entered an order, pursuant to *N.J.S.A. 20:3-18*, requiring the Township to deposit $ 1,286,000 into court, which represented the Township's estimate of just compensation for MCA's property. Montville was thereby entitled to immediate and exclusive possession of the property. *N.J.S.A. 20:3-19*.

In February 2003, a judgment was entered in favor of the Township, which then appointed commissioners to fix just compensation. On August 27, 2004, the commissioners rendered a report fixing compensation for the property at $ 1,345,000 and on October 6, 2004, the commissioners revised the report, increasing the amount to $ 1,348,000.

In September 2004, MCA appealed the commissioners' report to the Law Division. In December 2004, MCA moved in limine for a determination as to whether a 1977 consent judgment in *Robins v. Dep't of* [*4] *Env. Prot.*, Docket No. C-3461-75 (Ch. Div. May 5, 1977), (1) ran with the land; (2) controlled and established MCA's development rights for valuation/just compensation purposes; and (3) established that any subsequent environmental regulation would not limit those development rights in determining just compensation.

On March 29, 2005, the court entered an order granting MCA's motion in part and denying it in part. The order stated that the court found "as a matter of law that the 1977 Consent Judgment does not bar subsequent environmental regulations, specifically freshwater wetlands regulations, from being applicable to the property and the jury will be instructed accordingly." Paragraph three of the order stated that "MCA is entitled to offer the Consent Judgment into evidence and present testimony and argument to the jury that the Consent Judgment affects the determination of the fair market value of the property." The order further permitted MCA to move for leave to file a third party complaint against the DEP.

In April 2005, MCA filed a third party complaint against the DEP, alleging inverse condemnation and/or a regulatory taking of its property under state and federal law.

In September [*5] 2005, the DEP moved in lieu of an answer to dismiss the third party complaint. That motion was denied and the DEP filed its answer to the third party complaint, denying liability and asserting affirmative defenses.

In February 2006, the DEP moved for summary judgment. That motion was denied in an order entered on March 3, 2006. The DEP moved for clarification and reconsideration. In an order entered on July 21, 2006, DEP's motion for reconsideration was granted and the third party complaint against the DEP was dismissed.

Thereafter, Montville and MCA "reached agreement as to the just compensation payable to [MCA] for the property acquired as set forth in the Complaint," valued at the time of the taking, and entered into a consent judgment on March 8, 2007. In accordance with 2007 the consent judgment, Montville agreed to pay MCA $ 2,648,500 as just

Case 1:24-cv-09005-RMB-MJS   Document 68-2   Filed 11/24/25   Page 3 of 8 PageID: 816

2008 N.J. Super. Unpub. LEXIS 1830, *5

compensation for the property, with credits for the amounts previously paid. MCA, however, reserved its right to appeal the March 29, 2005 order denying its motion in limine and the July 21, 2006 order dismissing the third party complaint against the DEP.

The 2007 consent judgment provided that if MCA did not appeal from the March 29, 2005 [*6] order, or if MCA appealed and we affirmed, the 2007 consent judgment would be final and binding on the parties. If MCA appealed the March 29, 2005 order, and we reversed, however, the 2007 consent judgment "shall be without prejudice to either party and shall be deemed inoperative."

On April 23, 2007, MCA filed a notice of appeal from the two orders and the consent judgment.

The property subject to the condemnation consists of forty-two acres, designated Lots 12 and 13, Block 138. MCA purchased the property in 1996 from James Nuckel. Nuckel, who was the president and principal of MCA, purchased the property in 1993 from the Bank of New York. Prior to that, the property was owned by Perry Robins and Irene Jacobs, brother and sister, who inherited it from their father in 1970.

In 1976, Robins and Jacobs filed a complaint against the DEP, the Township and the Township Tax Assessor, alleging inverse condemnation against the DEP based upon its application of flood control regulations which purportedly rendered the property unmarketable and undevelopable. Against the Township and tax assessor, Robins and Jacobs alleged that the assessed value of the property failed to take into account the [*7] limitations on development and potential marketability resulting from the DEP's flood control regulations.

In May 1977, the parties entered a consent judgment with the DEP. Neither the Township nor the tax assessor were parties to the 1977 consent judgment. In accordance with the 1977 consent judgment, the property was divided into two zones: west (zone one) and east (zone two) of the floodwater encroachment line, anticipating that there would be no development in zone one, and placing certain restrictions on any development in zone two consistent with the regulations in effect at the time. With respect to possible future regulations, the 1977 consent judgment provided:

> 8. In the event that plaintiffs' rights with respect to the said property shall be affected by subsequent statutory modification by the legislature of the State of New Jersey, there is hereby reserved to plaintiffs such rights in condemnation or other rights as may be provided by law and this Judgment shall in no way be construed to affect any such rights of plaintiffs.

With respect to the effect of the 1977 consent judgment, it provided:

> 9. It is hereby further ORDERED:
>
> (a) That the terms of the within Judgment in its entirety [*8] may only be modified upon further Order of this Court pursuant to an amended Consent Judgment.
> (b) That the terms embodying the within Consent Judgment shall be subject to modification only by the consent of the parties as aforesaid or by the establishment of less stringent requirements through appropriate legislation.
> 10. This Judgment shall be recorded by plaintiffs within five days of the date of entry hereof with the Clerk of Morris County, it being the intention of the parties that the conditions contained herein shall run with the land, and said recording shall serve as notice to all the world as to the subject matter hereof.

When the consent judgment was entered, the DEP did not yet regulate wetlands. That regulation was controlled by the Army Corps of Engineers. *N.J.S.A. 13:9B-2*; *N.J.S.A. 13:9B-27*.

In support of its 2005 motion in limine, MCA submitted an affidavit of Bennett Stern, the attorney who represented Robins and Jacobs. Stern attested that he was involved in negotiating and drafting the consent judgment "to establish parameters within which the property owners would be permitted to develop the subject property." Stern stated:

> In entering into the Final Consent Judgment, [*9] the parties specifically anticipated the possibility of future enactments of environmental regulation, and included express language with regard to such possibility.

Case 1:24-cv-09005-RMB-MJS    Document 68-2    Filed 11/24/25    Page 4 of 8 PageID: 817

2008 N.J. Super. Unpub. LEXIS 1830, *9

> Although the Consent Judgment does not differentiate between floodplains and wetlands, its terms were intended to cover all future legislative regulation that might impact the property owner's development rights.

According to Stern, only future environmental regulations that were "less stringent," in other words "permitting more development," would justify modification of the agreement. He further indicated that "the property owners would have rights in condemnation if future regulations restricted the use of the property." He interpreted the consent judgment as follows:

> In sum, pursuant to the Final Consent Judgment, the parties agreed that the property owners had the right to develop Zone 2 of the subject property without restriction except for the restrictions specifically enumerated in the Consent Judgment. Further, if future regulations affected the property owners' right to develop the subject property, the parties expressly reserved rights in condemnation to seek compensation for the right to develop the property  [*10] to the extent permitted by the Consent Judgment.

Taking the 1977 consent judgment into account, MCA's appraisal expert valued the property at $ 8,275,000 as of August 24, 1999. That appraisal was based on contemplated construction of a 275,948 square foot multi-story office building, which would constitute the highest and best use of the property. This appraisal did not take into account any of the environmental regulations adopted since the 1977 consent judgment.

The Township's evaluation expert disagreed with MCA's interpretation of the 1977 consent judgment. The Township's expert argued that under the existing Freshwater Wetlands Protection Act, "over fifty percent of [the property] is wetlands or floodplain," which could not sustain the level of development proposed by MCA's appraiser.

In the mid-1990s, Nuckel contemplated construction of a 52,000 square foot retail shopping center on the property. He applied to the DEP for a letter of interpretation of the 1977 consent judgment to verify the jurisdictional boundary of the freshwater wetlands and waters and for a stream encroachment permit, a minor wetlands crossing permit, and a transition area waiver. The DEP granted the request  [*11] and issued a letter of interpretation expiring in 1999, with the permit expiring in 2001. The approval specifically addressed the application for a 52,000 square foot project. The development plan never came to fruition, however, and the permit expired in 2001.

Against this background, MCA filed this appeal of the two orders and the consent judgment, arguing:
> POINT I
> THE TRIAL COURT ERRONEOUSLY DISMISSED [MCA]'S THIRD-PARTY COMPLAINT AGAINST NJDEP BECAUSE THE TOWNSHIP'S DIRECT CONDEMNATION OF MCA'S PROPERTY DID NOT PRECLUDE AN ACTION FOR INVERSE CONDEMNATION BASED ON THE GENERAL CONSTITUTIONAL REQUIREMENT OF JUST COMPENSATION FOR A GOVERNMENTAL TAKING OF PRIVATE PROPERTY.
> POINT II
> THE STATE'S REGULATORY ACTION HAS INTERFERED WITH MCA'S INVESTMENT-BASED EXPECTATIONS AND CONSTITUTES A TAKING BY INVERSE CONDEMNATION.
> A. The Environmental Regulations Enacted Subsequent To The 1977 Consent Judgment Had A Severe Adverse Economic Effect And Defeated MCA's Investment Backed Expectations.
>
> 1. With Regard To The *Penn Central* "Character Of The Governmental Action" Criterion, The State Action Causing The Taking Was Not Undertaken Pursuant To State Nuisance Law.
>
> 2. With Regard To The *Penn Central* "Economic  [*12] Impact Of Regulation" Criterion, MCA Sustained Severe Economic Loss Due To The State's Actions.
>
> 3. Under The *Penn Central* "Economic Expectations" Criterion, The State's Conduct Has Substantially Interfered With MCA's Reasonable, Investment-Backed Expectations As To The Property.
>
> B. The Existence Of An "Alternative" Economically Viable Use Does Not As A Matter Of Law Preclude A Taking As A Matter Of Law Under The *Penn Central* Analysis.
> POINT III

Case 1:24-cv-09005-RMB-MJS   Document 68-2   Filed 11/24/25   Page 5 of 8 PageID: 818

2008 N.J. Super. Unpub. LEXIS 1830, *12

> THE TRIAL COURT ERRED IN DETERMINING THAT THE 1977 CONSENT JUDGMENT [WAS NOT INTENDED TO AFFECT] CONSIDERATION OF [ALL] SUBSEQUENT ENVIRONMENTAL REGULATIONS [FOR THE] PURPOSES OF DETERMINING JUST COMPENSATION TO BE PAID BY THE TOWNSHIP.
> POINT IV
> THE TRIAL COURT ERRED IN ITS IN LIMINE ORDER DETERMINING THAT THE 1977 CONSENT JUDGMENT DID NOT CONTROL FOR PURPOSES OF ASSESSING THE FAIR MARKET VALUE OF THE PROPERTY TAKEN BY THE TOWNSHIP.
> A. The Consent Judgment Was Intended To Protect The Property Owner's Right To Compensation For Its Development Rights And Was Not Limited To Floodwater Or Flood Plain Issues As Demonstrated By The Uncontradicted Affidavit Of Bennett Stern, A Draftsman Of The Consent Judgment.
>
> B. Relief From The Consent Judgment Under Rule 4:50-1 [*13] Is Not Appropriate Because The Possibility Of Later Enactment Of More Stringent Regulations Was Anticipated And, In Such Event, The Consent Judgment Required The Landowner To Be Compensated For The Loss Of Those Rights.

I

MCA appeals from the dismissal of its third party complaint against the DEP, arguing that the direct condemnation action against the Township does not preclude MCA's action for inverse condemnation because the two actions are separate and distinct with different remedies.

The trial court dismissed MCA's third party complaint against the DEP on the grounds that there could not be two condemning authorities. The court stated that because Montville took the property directly, it is not an inverse condemnation, and with "a direct condemnation. . . . the only question is value."

The Law Division reviewed the legal issues presented de novo. *Manalapan Realty L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995)*. The law recognizes both direct takings and takings by inverse condemnation. *Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 537, 125 S. Ct. 2074, 2081, 161 L. Ed. 2d 876, 887 (2005)*; *Mansoldo v. State, 187 N.J. 50, 58, 898 A.2d 1018 (2006)*; *Rieder v. State of N.J. Dep't of Trans., 221 N.J. Super. 547, 553, 535 A.2d 512 (App. Div. 1987)*. [*14] A direct taking occurs when condemnation proceedings are affirmatively instituted with respect to a property, as with the Township's direct taking of MCA's property. *Lingle, supra, 544 U.S. at 537, 125 S. Ct. at 2081, 161 L. Ed. 2d at 887*; *N.J.S.A. 20:3-6*; *Mansoldo, supra, 187 N.J. at 58*.

In a direct taking, unless the condemnor specifies a lesser title in the complaint, the condemnor takes title to the entire condemned property "in fee simple, free and discharged of all right, title, interest and liens of all condemnees." *N.J.S.A. 20:3-20*.

Inverse condemnation occurs by virtue of governmental regulation that goes "too far." *Pa. Coal Co. v. Mahon, 260 U.S. 393, 415, 43 S. Ct. 158, 160, 68 L. Ed. 322, 326 (1922)*; *Mansoldo, supra, 187 N.J. at 58*. For example, governmental regulation results in an inverse condemnation when it "compel[s] the property owner to suffer a physical 'invasion' of his property" or when it "denies all economically beneficial or productive use of land." *Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1015, 112 S. Ct. 2886, 2893, 120 L. Ed. 2d 798, 812-13 (1992)*; *Mansoldo, supra, 187 N.J. at 58*.

"If the regulation does not deny all economically beneficial use under *Lucas*, [*15] then the determination whether the regulation otherwise constitutes a compensable taking is governed by the standards set forth in *Penn Central Trans. Co. v. New York City, 438 U.S. 104, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978)*." *Mansoldo, supra, 187 N.J. at 59*. This is a fact-specific inquiry. "The rub, of course, has been - and remains - how to discern how far is 'too far.'" *Lingle, supra, 544 U.S. at 538, 125 S. Ct. at 2081, 161 L. Ed. 2d at 887*.

Under *Penn Central*, the court's inquiry into whether there has been an inverse condemnation "turns in a large part, albeit not exclusively, upon the magnitude of a regulations' economic impact and the degree to which it interferes with legitimate property interests." *Lingle, supra, at 544 U.S. at 540, 125 S. Ct. at 2082, 161 L. Ed. 2d at 889*. We

Case 1:24-cv-09005-RMB-MJS   Document 68-2   Filed 11/24/25   Page 6 of 8 PageID: 819

2008 N.J. Super. Unpub. LEXIS 1830, *15

must consider a variety of factors, including (1) "the economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action," for example, whether there has been "a physical invasion" of the property. *Penn Central, supra,* 438 U.S. at 124, 98 S. Ct. at 2659, 57 L. Ed. 2d at 648.

Applying [*16] *Penn Central,* we have held that a claim of inverse condemnation is not substantiated unless the property owner has been "deprived of all or substantially all of the beneficial value of the totality of his property." *Orleans Builders & Developers v. Byrne,* 186 N.J. Super. 432, 436, 453 A.2d 200 (App. Div.), *certif. denied,* 91 N.J. 528, 453 A.2d 851 (1982). *See also Karam v. State of N.J. Dep't of Envtl. Prot.,* 308 N.J. Super. 225, 235, 705 A.2d 1221 (App. Div. 1998) (determining that the court must consider "whether the regulation has deprived the owner of virtually all economically viable uses of the property.") *aff'd,* 157 N.J. 187, 723 A.2d 943, *cert. denied,* 528 U.S. 814, 120 S. Ct. 51, 145 L. Ed. 2d 45 (1999); *East Cape May Assocs. v. State of N.J. Dep't of Envtl. Prot.,* 300 N.J. Super. 325, 336-37, 693 A.2d 114 (App. Div. 1997) (holding that inverse condemnation occurs when regulations deny economically viable use of property and property owner had investment-backed expectations supported by state property law); *Pinkowski v. Twp. of Montclair,* 299 N.J. Super. 557, 575-76, 691 A.2d 837 (App. Div. 1997) (holding that inverse condemnation requires showing that government "substantially impaired the land owner's use of the property").

Lesser effects on the property [*17] will not suffice to establish inverse condemnation. *Gardner v. N.J. Pinelands Comm'n,* 125 N.J. 193, 210-11, 593 A.2d 251 (1991) (holding that impairment of marketability and restrictions on uses do not necessarily result in takings although they may reduce income or profits).

The Freshwater Wetlands Protection Act imposes standing and exhaustion of remedies requirements for individuals claiming inverse condemnation as a result of the regulations. *N.J.S.A. 13:9B-22.* An exhaustion of remedies requirement, however, may be waived when there is only a question of law to be resolved; the administrative remedies would be futile; irreparable harm would result; jurisdiction of the agency is in doubt; or the public interest warrants prompt judicial action. *Abbott v. Burke,* 100 N.J. 269, 297-98, 495 A.2d 376 (1985); *N.J. Civil Serv. Ass'n v. State,* 88 N.J. 605, 612-13, 443 A.2d 1070 (1982); *Garrow v. Elizabeth Gen. Hosp. & Dispensary,* 79 N.J. 549, 561, 401 A.2d 533 (1979).

MCA cites no New Jersey cases in support of its claim that it should be permitted to pursue its inverse condemnation action against the DEP along with its challenge to the Township's direct condemnation action. Rather, MCA relies on out-of-state cases that are factually distinguishable [*18] from this case and do not warrant further discussion herein.

In our view, MCA lacks standing to assert its inverse condemnation claim because it did not have title to the property when it filed the complaint. "Standing requires that a litigant have a sufficient stake and real adverseness with respect to the subject matter of the litigation, and a substantial likelihood that some harm will fall upon it in the event of an unfavorable decision. *In re N.J. Bd. of Pub. Utils.,* 200 N.J. Super. 544, 556, 491 A.2d 1295 (App. Div. 1985). Title and ownership of the property passed to the township in November 2002, when the township filed the declaration of taking. *N.J.S.A. 20:3-21; see also Carroll v. Newark,* 108 N.J.L. 323, 328, 158 A. 458 (E. & A. 1932). Since MCA did not contest the township's right to take the property -- challenging only the amount of compensation owed -- title would not revert to MCA unless the Township abandoned its exercise of eminent domain, which has not occurred. *N.J.S.A. 20:3-22.* Consequently, MCA lacks standing to pursue an inverse condemnation against the DEP.

II

MCA next argues that the trial court erred in denying its motion in limine with respect to the 1977 consent judgment. In essence, [*19] MCA argues that under the terms of the 1977 consent judgment, it is entitled to just compensation for the property, based upon the development rights protected by the 1977 consent judgment, irrespective of any subsequent environmental regulations that may have further limited development rights on the property.

2008 N.J. Super. Unpub. LEXIS 1830, *19

MCA maintains that the DEP is obligated to pay the difference in the property's value between the 1977 consent judgment and the date of the township's taking resulting from the State's adoption of more stringent environmental regulations. Alternatively, MCA argues that if we preclude its inverse condemnation action against the DEP, the township is responsible for paying the differential in the property's value between the 1977 consent judgment and the time of the taking, in addition to the amount the township previously paid pursuant to its consent judgment.

We have carefully considered the record with respect to MCA's arguments on these issues and we are satisfied that they lack sufficient merit to warrant extensive discussion in this opinion. *R. 2:11-3(e)(1)(E)*. Nevertheless, we add the following comments.

The trial court correctly held that the township was obligated to pay **[*20]** just compensation to MCA, calculated as the fair market value of the property at the time of the taking with the jury permitted to consider the effect of the 1977 consent judgment as interpreted by the court. The township paid just compensation to MCA pursuant to the 2007 consent judgment from which MCA has no right of appeal.

With respect to the DEP, we have already indicated that MCA's inverse condemnation action failed for lack of standing. MCA cannot pursue a claim against the DEP for breach of the 1977 consent judgment because MCA did not allege such a claim in its third party complaint -- it alleged only inverse condemnation claims.

The 1977 consent judgment was a settlement agreement between the DEP and Robins and Jacobs. *Fox v. U.S. Dep't of Hous. & Urban Dev., 680 F.2d 315, 319 (3d cir. 1982)*. The consent judgment did not address wetlands regulations, which in 1977 were enforced by the Army Corps of Engineers, nor did it prevent application of more stringent environmental regulations to the property in the future. Indeed, at paragraph eight, the 1977 consent judgment expressly anticipated the possibility of more stringent regulations in the future. Paragraph nine merely precludes **[*21]** modification of the terms of the judgment, except under limited circumstances. We agree with the trial court that to limit the application of the agreement to then-existing statues and regulations would be "contrary to public policy. . . . [a]nd that could not have been the intent of the consent judgment." "When one interpretation of a contract would render it legal, and another illegal, the courts will adopt that construction which will not impute to the parties an intention to violate the law." *Kelly v. Guar. Trust Co., 114 N.J.Eq. 110, 115, 168 A. 413 (E. & A. 1933)*; *see also N.J. Bank v. Palladino, 77 N.J. 33, 46, 389 A.2d 454 (1978)* (holding that "when the terms of an agreement have more than one possible interpretation, by one of which the agreement would be valid and by the other void or illegal, the former will be preferred").

With respect to the evidentiary value of the 1977 judgment, we agree with the trial court's finding:

> [I]t is something that a willing buyer . . . would consider in terms of negotiations with the DEP, for example . . . what would be determined in terms of permits. Certainly, there are arguments that could be made that in settling development of the property and wetlands and what **[*22]** can and can't be developed, that you'd be sitting down with the DEP and looking at the fact that there was this consent judgment, as well as the subsequent wetlands regulation. And that's a subject for negotiation that may or may not produce results with the DEP, but we don't need to worry about that because that's speculation.
> But we do -- it is something that's evidentiary for the jury to consider. And they can determine in terms of value whether that has any effect. They may determine, though, the wetlands would bar any subsequent development in terms of the larger office building here. Or they may say, well, we think there is some value to that because they could negotiate with the DEP in that regard.
> So that is the subject, I think, for the jury to hear. But the jury has to be charged that the '77 judgment does not bar subsequent wetlands regulation. However, the '77 judgment is still in effect. And that is something that is a matter of negotiation with the DEP in terms of overall value.

Although the terms of the 1977 consent judgment run with the land, the consent judgment does not give MCA the right to receive any compensation from the Township, other than what the general law **[*23]** of condemnation requires. Nothing in the 1977 consent judgment supports MCA's right to be compensated by the township for the

Case 1:24-cv-09005-RMB-MJS   Document 68-2   Filed 11/24/25   Page 8 of 8 PageID: 821

2008 N.J. Super. Unpub. LEXIS 1830, *23

loss in property value caused by the application of more stringent environmental regulations adopted after the consent judgment but before the date of the taking.

We affirm the trial court's order for the reasons stated herein.

---

**End of Document**