UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHELE AND FRANK TEDESCO, et al.**<br><br>**Plaintiffs,**<br><br>v.<br><br>**BOROUGH OF HADDONFIELD and NEW JERSEY-AMERICAN WATER COMPANY, INC.,**<br><br>**Defendants.** | CIVIL ACTION<br><br>Docket No. 1:24-cv-09005-RMB-MJS |

**BRIEF ON BEHALF OF DEFENDANT BOROUGH OF HADDONFIELD IN OPPOSITION TO PLAINTIFFS' MOTION TO QUASH AND FOR A PROTECTIVE ORDER**

**BROWN & CONNERY LLP**
William F. Cook, Esquire
Joseph T. Carney, Esquire
Brianna M. Morello, Esquire
360 North Haddon Avenue
Westmont, New Jersey 08108
*Attorneys for Borough of Haddonfield*

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................. iii

**BACKGROUND** ......................................................................................................1

**ARGUMENT** ............................................................................................................2

    I.    **PLAINTIFFS' MOTION TO QUASH AND FOR A PROTECTIVE ORDER MUST BE DENIED BECAUSE THE INFORMATION SOUGHT IS DIRECTLY RELATED TO MARKETABILITY AND VALUATION OF 60 CHEWS LANDING AND 80 CHEWS LANDING** ........................................................................................2

        A.  **Plaintiffs do not have standing to quash the Subpoena** ........................2

        B.  **The Subpoena should not be quashed because the information sought is relevant to the Borough's defenses against Plaintiffs' inverse condemnation claim** ....................................................................3

        C.  **Plaintiffs have articulated no basis for a protective order to be entered and this motion is premature** ..................................................5

**CONCLUSION** ........................................................................................................8

# **TABLE OF AUTHORITIES**

## CASES

Andrews v. Holloway,
256 F.R.D. 136 (D.N.J. 2009)......................................................................................6

Catskill Development, LLC v. Park Place Entertainment Corp.,
206 F.R.D. 78 (S.D.N.Y. 2022) ...................................................................................3

Direct TV, Inc. v. Richards,
2005 U.S. Dist. LEXIS 43764 (D.N.J. June 27, 2005)...............................................2

In re Grand Jury,
111 F.3d 1083 (3rd Cir. 1997) .....................................................................................6

Jones v. DeRosa,
238 F.R.D. 157 (D.N.J 2006).......................................................................................3

Malibu Media, LLC v. Doe,
2016 U.S. Dist. LEXIS 92069 (D.N.J. July 14, 2016)................................................2

Morganroth & Morganoth v. DeLorean,
123 F.3d 374 (6th Cir. 1997).......................................................................................6

Schmulovich v. 1161 Rt. 9 LLC,
2007 U.S. Dist. LEXIS 59705 (D.N.J. Aug. 15, 2007) ..............................................2

Thomas v. IBM,
48 F.3d 478 (10th Cir. 1995) ......................................................................................4

Thomas v. Marina Assocs.,
202 F.R.D. 433 (E.D. Pa. 2001)...................................................................................2

Trammel v. United States,
445 U.S. 40 (1980)........................................................................................................6

United States v. Parker,
834 F.2d 408 (4th Cir. 1987).......................................................................................6

United States v. Robinson,
763 F.2d 778 (6th Cir. 1985)..................................................................................6


## RULES

Fed. R. Civ. P. 26(b)(1)...........................................................................................3

Fed. R. Civ. P. 26(b)(2)...........................................................................................4

R. Civ. P. 45(c)(3)(A)(iii) .......................................................................................3


## OTHER

Stephen A. Saltzburg, Michael M. Martin and Daniel J. Capra,
2 Federal Rules of Evidence Manual (9th ed.) P501.02[8] (2006).............................6

## BACKGROUND

Plaintiffs initiated this lawsuit on August 8, 2024, alleging theories of negligence, nuisance, trespass ("Title 59 Claims") and inverse condemnation as to certain residential properties in the Borough. On November 18, 2025, this Court granted the Borough's motion for partial summary judgment and dismissed Plaintiffs' Title 59 Claims. (ECF No. 66). Plaintiffs' sole remaining claim against the Borough is for inverse condemnation, where Plaintiffs allege that the Borough has "deprived Plaintiffs of the substantial use of their Properties, has taken and deprived Plaintiffs of the substantial valuation of their Properties and in so doing, has rendered the Properties unmarketable." (ECF No. 1, pp. 12, para. 48).

On October 17, 2025, the undersigned deposed Plaintiff Jodi Fox-Mellul ("Dr. Fox-Mellul"). The undersigned asked Dr. Fox-Mellul why she and her husband, Steven Mellul ("Dr. Mellul"), deeded 80 Chews Landing from them jointly to her individually in 2024. Dr. Fox-Mellul responded that they wanted to "protect our assets" in light of Dr. Mellul's new business venture with Plaintiff Victor Palladino known as Haddonfield Development Group, LLC (the "Corporation"). This prompted the Borough to investigate the Corporation, wherein Mr. Palladino and Dr. Mellul were the sole members. The Borough discovered mortgage documents that listed 60 and 80 Chews Landing Road as the principal address(es) of the

Corporation. See Exhibit A and Exhibit B. These mortgage documents included $1,840,000.00 in loans from Mr. and Mrs. Palladino to the Corporation.

On November 4, 2025, the Borough issued a subpoena on Tavis Karrow (the "Subpoena"), registered agent of the Corporation, requesting all documents pertaining to the Corporation's formation, dissolution, loan agreements, promissory notes and personal guarantees. On November 11, 2025, Plaintiffs filed a motion to quash the Subpoena and for a protective order barring the Borough from questioning Dr. Fox-Mellul and Rose Palladino about the Corporation.

## ARGUMENT

**I. PLAINTIFFS' MOTION TO QUASH AND FOR A PROTECTIVE ORDER MUST BE DENIED BECAUSE THE INFORMATION SOUGHT IS DIRECTLY RELATED TO MARKETABILITY AND VALUATION OF 60 CHEWS LANDING AND 80 CHEWS LANDING.**

**A. Plaintiffs do not have standing to quash the Subpoena.**

"Generally, a motion to quash or modify a subpoena must be brought by the individual to whom it was directed." Malibu Media, LLC v. Doe, 2016 U.S. Dist. LEXIS 92069, *7 (D.N.J. July 14, 2016) citing Thomas v. Marina Assocs., 202 F.R.D. 433, 434-435 (E.D. Pa. 2001). "A party has standing to bring a Motion to Quash or modify a subpoena upon a non-party when the party claims a personal privilege in the production sought." Schmulovich v. 1161 Rt. 9 LLC, 2007 U.S. Dist. LEXIS 59705, at *2 (D.N.J. Aug. 15, 2007) citing Direct TV, Inc. v. Richards, 2005

2

U.S. Dist. LEXIS 43764, at *1 (D.N.J. June 27, 2005) (citing Catskill Development, LLC v. Park Place Entertainment Corp., 206 F.R.D. 78, 93 (S.D.N.Y. 2022)). Fed. R. Civ. P. 45(c)(3)(A)(iii) requires a court quash a subpoena if it seeks "disclosure of privileged or other protected matter, if no other exception or waiver applies."

The Borough served the Subpoena on nonparty Tavis Karrow. Thus, Plaintiffs must prove that the Subpoena seeks personally privileged information. Plaintiffs have not met this threshold. In fact, their moving brief completely ignores this issue. Plaintiffs articulate no basis upon which they have standing to bring this motion. Nor do Plaintiffs assert any privacy interest or personal privilege that would satisfy the R. 45(c)(3)(A)(iii) standard. Notwithstanding the same, the Subpoena does not seek any personal information of Plaintiffs that would give them standing to bring this motion.

**B. The Subpoena should not be quashed because the information sought is relevant to the Borough's defenses against Plaintiffs' inverse condemnation claims.**

"The Federal Rules of Civil Procedure adopt a liberal policy for providing discovery." Jones v. DeRosa, 238 F.R.D. 157, 163 (D.N.J 2006). Fed. R. Civ. P. 26(b)(1) provides that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party…For good cause, the court may order discovery of any matter relevant to the subject matter involved in

3

the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

The court may quash a deposition notice or subpoena under its general power to limit discovery. See Fed. R. Civ. P. 26(b)(2), (c) "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii). However, courts will generally grant a motion to quash, or a motion for a protective order to prohibit a deposition, only in extraordinary circumstances. Thomas v. IBM, 48 F.3d 478, 483 (10th Cir. 1995) (deposition of corporate officer in age discrimination action quashed after he testified by affidavit that he lacked personal knowledge of plaintiff and her work performance).

Here, the Subpoena requests, among other things, loan agreements, promissory notes and personal guarantees in connection with the Corporation. This information is directly related to the marketability and valuation of 80 Chews Landing and 60 Chews Landing. To prove this point, the Court need not look any further than the deposition testimony of Dr. Fox-Mellul (Exhibit "C"):

Q. So am I correct that since March 29 of 2024, you have been the sole owner of 80 Chews; is that right?
A. Yes.

4

Q: Why was this transfer made as of March 29 of 2024?

**A: My husband started a - - he ventured off to a side business. And we just wanted to protect our assets.**

Q. And that side business was what?

A. It was Haddonfield Development.

(Tr. 38:11-21).

This testimony provides a sufficient basis for further discovery that 80 Chews Landing may have been pledged as part of a personal guarantee or security interest for the Corporation's loans. Surely, this information is extremely relevant to the Borough's defense of Plaintiffs' inverse condemnation claims, since these claims allege that the Borough has stripped their properties of all marketable value. Any document(s) providing that Plaintiffs have used these properties for security completely debunks Plaintiffs' unmarketability/devaluation theory advanced in this action.

**C. Plaintiffs have articulated no basis for a protective order to be entered, and such an order is premature.**

Plaintiffs' motion, in the alternative, requests a prophylactic protective order barring the Borough from deposing Mrs. Palladino and Dr. Fox-Mellul on any issues relating to the Corporation. Plaintiffs' argument is based on the idea that Mrs. Palladino and Dr. Fox-Mellul's testimony is protected by marital communications and spousal privilege.

The Federal Courts recognize two types of marital privilege: (1) the privilege that protects confidential marital communications and (2) the privilege that protects one spouse from testifying against the other. In re Grand Jury, 111 F.3d 1083 (3rd Cir. 1997). The latter has been "sharply criticized by the Supreme Court of the United States" as being "the merest anachronism in legal theory and an indefensible obstruction to truth in practice." Id. quoting Trammel v. United States, 445 U.S. 40, (1980). The purpose of this privilege is to protect "the marriage from the discord that occurs when one spouse testifies against another." The marital communications privilege "is designed to protect and further marital intimacy as of the time the communication is made between the spouses." Andrews v. Holloway, 256 F.R.D. 136, 147 (D.N.J. 2009) citing Stephen A. Saltzburg, Michael M. Martin and Daniel J. Capra, 2 Federal Rules of Evidence Manual (9th ed.) P501.02[8], at p. 501-75 (2006). This privilege only protects communications, not conduct or occurrences. United States v. Parker, 834 F.2d 408, 411 (4th Cir. 1987). A spouse's testimony concerning discovery of her husband's business documents is not protected under the marital communications privilege. United States v. Robinson, 763 F.2d 778 (6th Cir. 1985). This privilege can be waived by either spouse if a timely objection is not made. Andrews at 147, citing Morganroth & Morganoth v. DeLorean, 123 F.3d 374 (6th Cir. 1997).

Plaintiffs provided no support to their proffer that spousal privilege applies in this instance, or that adverse legal consequences would become Mr. Palladino or Dr. Mellul because of their spouses' testimony about their joint business venture. This privilege is almost always used in a criminal context and is not applicable to the circumstances at play in this case.

Regarding the martial communications privilege, Plaintiffs again provide no evidence to support their argument that Mrs. Palladino and Dr. Fox-Mellul have no "first-hand knowledge" of the Corporation and thus cannot be asked about it. The Borough has every right to question Mrs. Palladino about the Corporation because she signed off on two $1,840,000.00 mortgage loans to it. See Exhibit A and Exhibit B. Mrs. Palladino evidently has direct knowledge of the Corporation, and she should not be permited to hide behind a privilege just because she does not want to answer questions.

The same applies to Dr. Fox-Mellul. Her testimony about the Corporation is not protected by privilege to the extent she has her own knowledge of and feelings toward the Corporation's dealings. Dr. Fox-Mellul was clearly concerned enough about the Corporation to have 80 Chews Landing deeded to herself as a protective measure. See Exhibit D. Not only is her testimony relevant as to the Corporation itself, but also to how she and Dr. Mellul considered 80 Chews Landing an asset of significant value worthy of protection in the first place.

Critically, Dr. Fox-Mellul has already testified as to why the property was deeded to her; no privilege was asserted in connection with that testimony. Dr. Fox-Mellul cannot now use the privilege as a sword and a shield to preclude further discovery into the information that she provided.

Finally, seeking a protective order here is premature. It is apparent that both Mrs. Palladino and Dr. Fox-Mellul have first-hand knowledge of the Corporation. The extent of this knowledge is unknown and should be open to questioning at their depositions. The depositions should be conducted in normal course with Mrs. Palladino and Dr. Fox-Mellul asserting a privilege if the need arises, and the Court having a full record before it if the privilege is questioned. A preclusive protect order, however, is not warranted in this instance.

## **CONCLUSION**

The Subpoena seeks information that is highly relevant, nonprivileged and pertinent to defend against Plaintiffs' inverse condemnation claims. Further, the marital privileges do not apply to Mrs. Palladino's and Dr. Fox-Mellul's testimony.

For all of the above reasons, the Borough respectfully requests the Court deny Plaintiffs' motion to quash and for a protective order.

Respectfully submitted,

**BROWN & CONNERY LLP**

By: _s/ *William Cook*_
William F. Cook, Esquire

DATED: December 1, 2025

On the Brief: William F. Cook, Esquire
Joseph T. Carney, Esquire
Brianna M. Morello, Esquire